[Cite as *Kanter v. Cleveland Hts.*, 2017-Ohio-1038.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   104375

## GARRY KANTER

RELATOR-APPELLANT

vs.

## CITY OF CLEVELAND HEIGHTS

RESPONDENT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-853953

**BEFORE:**   Boyle, J., Keough, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**    March 23, 2017

**ATTORNEY FOR APPELLANT**

Warner Mendenhall
190 N. Union Street, Suite 201
Akron, Ohio   44304


**ATTORNEYS FOR APPELLEE**

L. James Juliano
Law Director
Kevin P. Roberts
Elizabeth Wells Rothenberg
Assistant Directors of Law
City of Cleveland Heights
40 Severance Circle
Cleveland Hts., Ohio   44118

MARY J. BOYLE, J.:

{¶1}    Relator-appellant, Gary Kanter ("Kanter"), a resident of Cleveland Heights,

appeals a judgment dismissing his complaint against respondent-appellee, city of

Cleveland Heights.    Kanter raises one assignment of error for our review:

> The trial court erred in dismissing relator's complaint due to the fact that
> relator alleged facts that, if taken as admitted (as they must be in a motion
> to dismiss), entitled him to recovery.

{¶2}    Finding no merit to his assigned error, we affirm.

## I. Procedural History

{¶3}    In November 2015, Kanter filed a complaint against the city of Cleveland

Heights asserting it violated R.C. 121.22(C) because Cleveland Heights council members

did not prepare minutes of committee meetings, specifically minutes from meetings of the

"Committee of the Whole," and make them open to the public for inspection.[1]

---

[1]Kanter further alleged in his second count that city council members violated Cleveland Heights Codified Ordinances ("CHCO") 107.04 because they did not prepare, file, maintain, and publish minutes from meetings consisting of the "Committee of the Whole."    But we will not address this issue because Kanter has abandoned this issue on appeal.

We further note that in the "statement of facts" section of his complaint, Kanter stated that the Cleveland Heights Youth Advisory Commission is a public body that met five times in 2014, and that no minutes were kept of those meetings, and that the Cleveland Heights Architectural Board of Review is a public body that met four times in 2015, and no minutes were kept of those meetings.    But Kanter fails to mention these entities in his two alleged claims (in those, he simply argues that the Committee of the Whole violated R.C. 121.22 and CHCO 107.04).    Although he incorporates his facts into his two claims, he fails to separately allege that  the commission and board violated R.C. 121.22 or CHCO 107.04.    Likewise, on appeal, Kanter briefly mentions the commission and board in his "statement of the case and facts," but he fails to mention them anywhere in the argument section of his brief.    Indeed, he fails to mention them again after briefly mentioning them in his facts.    We will, therefore, not address these entities.    *See* App.R. 12(A)(2) and 16(A).

{¶4} Pursuant to R.C. 121.22(I), Kanter sought a civil forfeiture of five hundred dollars for each improper meeting held, as well as injunctive relief barring Cleveland Heights council members from holding committee meetings without preparing and publishing minutes from those meetings. Kanter further sought a writ of mandamus to compel council members to prepare and publish all past and future minutes of committee meetings. Finally, Kanter requested reasonable attorney fees pursuant to R.C. 122.22(I)(2)(a).

{¶5} Cleveland Heights moved to dismiss Kanter's complaint pursuant to Civ.R. 12(B)(6). In its motion, Cleveland Heights argued that the complaint failed to state a claim upon which relief could be granted because Cleveland Heights operated under its sovereign power pursuant to home rule authority provided in the Ohio Constitution, its charter, and its codified ordinances. Cleveland Heights asserted that where local rules differ from the state's general laws, such as the Sunshine Law at issue here (the Open Meetings Act), the local rule prevails.

{¶6} The trial court granted Cleveland Heights' motion and dismissed Kanter's complaint. It is from this judgment that Kanter now appeals.

## II. Standard of Review

{¶7} We review an order dismissing a complaint for failure to state a claim for relief de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in

favor of the plaintiff. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. While the factual allegations of the complaint must be taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 324, 544 N.E.2d 639 (1989). For a defendant to prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court in granting relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). "Under these rules, a plaintiff is not required to prove his or her case at the pleading stage. * * * [A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

{¶8} Kanter further sought relief in mandamus. R.C. 121.22(I), which affords mandatory injunctive relief by way of a common pleas court action to enforce the provisions of the Open Meetings Act, does not prevent a mandamus action. *State ex rel. ACLU v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 25, citing *State ex rel. Fairfield Leader v. Ricketts*, 56 Ohio St.3d 97, 564 N.E.2d 486 (1990). To be entitled to extraordinary relief in mandamus, relator must establish a clear legal right to the requested relief, a clear legal duty on the part of Cleveland Heights to provide it, and the lack of an adequate remedy in the ordinary

course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Relator must prove that he is entitled to the writ by clear and convincing evidence. *Id*. at ¶ 13.

## III. Ohio's Open Meetings Act and CHCO 107.04

**{¶9}** In his sole assignment of error, Kanter contends that the trial court erred when it dismissed his complaint against Cleveland Heights for failure to state a claim. He argues that he is entitled to relief pursuant to R.C. 121.22(I) because Cleveland Heights violated Ohio's Open Meetings Act when its council members conducted committee meetings as "Committee of the Whole," without recording minutes of those meetings.

**{¶10}** Ohio's "Sunshine Laws" include Ohio's Public Records Act and Ohio's Open Meetings Act. *See* Ohio Attorney General Mike Dewine, *Ohio Sunshine Laws 2016: An Open Government Resource Manual*, http://www.ohioattorneygeneral.gov/yellowbook (accessed Feb. 21, 2017). Ohio's Open Meetings Act, set forth in R.C. 121.22, imposes open meeting requirements on public bodies. *Paridon v. Trumbull Cty. Childrens Servs. Bd.*, 2013-Ohio-881, 988 N.E.2d 904, ¶16. R.C. 121.22(A) requires that governmental bodies "take official action and * * * conduct all deliberations upon official business only in open meetings[.]" R.C. 121.22(C), which is the section of the act at issue in this case, provides in relevant part:

> The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this

section.

{¶11} R.C. 121.22(I) sets forth how a person can enforce a public body to comply with the Open Meetings Act. It provides:

> Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.

R.C. 121.22(I)(1).

{¶12} Cleveland Heights counters that the trial court properly dismissed Kanter's complaint. It argues that under the Home Rule Amendment of the Ohio Constitution, municipalities that have adopted a city charter are not required to follow the mandates of Ohio's Open Meetings Act. Cleveland Heights maintains that under CHCO 107.04, its council members do not have to record minutes of committee meetings because the ordinance states that minutes "may" be recorded, rather than "shall" be recorded.

{¶13} CHCO 107.04 provides:

> The minutes of all regular, special and emergency meetings of Council, shall be promptly recorded in writing and open to the public for inspection. Minutes of Council committee meetings *may be recorded* in writing. Minutes of executive sessions of public bodies need only reflect the general subject matter of discussion in such executive sessions.

(Emphasis added.)

{¶14} We must, therefore, determine if the trial court properly dismissed Kanter's complaint because, as Cleveland Heights contends, it was not required to follow Ohio's Open Meetings Act pursuant to its power of local self-government provided under the

Home Rule Amendment.

## IV.  Home Rule Amendment and Cleveland Heights' Charter

{¶15} The Home Rule Amendment of the Ohio Constitution resolves the question of the power of local self-government under a city charter.  *Piqua v. Piqua Daily Call*, 64 Ohio App.2d 222, 225, 412 N.E.2d 1331 (2d Dist.1979).  Home Rule gives municipalities a sovereignty over matters of local government.  In such matters, if a provision of a municipal charter conflicts with state law, the charter provisions will prevail.  *State ex rel. Bardo v. Lyndhurst*, 37 Ohio St.3d 106, 108-109, 524 N.E.2d 447 (1988), citing *State ex rel. Devine v. Hoermle*, 168 Ohio St. 461, 156 N.E.2d 131 (1959), and *State ex rel. Allison v. Jones*, 170 Ohio St. 323, 164 N.E. 2d 417 (1960); *see also State ex rel. Lightfield v. Indian Hill*, 69 Ohio St.3d 441, 442, 633 N.E.2d 524 (1994).

{¶16} The Home Rule Amendment, set forth in the Ohio Constitution, Section 3, Article XVIII, empowers municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

{¶17} Municipalities do not have to enact a charter to have the power over local self-government provided to them in the Ohio Constitution.  *N. Ohio Patrolmen's Benevolent Assn. v. Parma*, 61 Ohio St.2d 375, 379-380, 402 N.E.2d 519 (1980).  But municipalities exercise the powers of local self-government to the fullest by adopting a charter pursuant to Section 7, Article XVIII of the Ohio Constitution, which provides that "[a]ny municipality may frame and adopt or amend a charter for its government and may,

subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

{¶18} The words "as are not in conflict with general laws" in Section 3, Article XVIII of the Ohio Constitution, have been universally construed to place a limitation on a municipality's power to "adopt and enforce * * * local police, sanitary and other similar regulations," but not on the power of local self-government. *Hills & Dales, Inc. v. Wooster*, 4 Ohio App.3d 240, 242, 448 N.E.2d 163 (9th Dist.1982), citing *State ex rel. Canada v. Phillips*, 168 Ohio St. 191, 151 N.E.2d 722 (1958). "Police powers" encompass the areas of public health, safety, morals and general welfare. *Hills & Dales* at *id*.

{¶19} In *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, the Ohio Supreme Court explained that courts use a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule Amendment. First, courts must determine if the ordinance is an exercise of the city's "police power," rather than of local self-government. *Id.* at ¶ 17, citing *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Id.* at ¶ 18, quoting *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶20} The second step of the *Mendenhall* test is necessary only if the city

ordinance involves an exercise of police power. This step requires a court to determine whether the state law is a general law under the four-part test set forth in *Canton*.[2] If the state statute is a general law, then the local ordinance must give way if it conflicts with the general law. *Id.* at ¶ 17-18.

{¶21} The final step of the *Mendenhall* test is to determine whether the ordinance conflicts with the statute, i.e., whether the ordinance permits that which the statute forbids, and vice versa. If the ordinance conflicts with the general law, it will be held unconstitutional. If there is no conflict, the municipal action is permissible even though the statute is a general law. *Id.*

## V. Analysis

{¶22} Kanter concedes that CHCO 107.04 only pertains to matters of local self-government and is not an act of the city's police power. Instead, Kanter argues (in his "first proposition of law") that the Cleveland Heights' charter does not expressly state where it intends to "supercede and override" the state law set forth in R.C. 121.22. A municipality must clearly and expressly state the areas where the municipality intends to supersede and override general state statutes. *State ex rel. Lightfield v. Parma*, 69 Ohio St.3d 441, 443, 633 N.E.2d 524 (1994). We disagree with Kanter that Cleveland

---

[2]"To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Canton* at the syllabus.

Heights has not done so.

**{¶23}** Article II of the Cleveland Heights' charter states:

The City of Cleveland Heights shall have all powers of local self-government now or hereafter granted to municipalities by the Constitution and laws of Ohio, and such further powers as may now or hereafter be granted by the laws of Ohio; and all such powers shall be exercised in the manner prescribed by this Charter or by ordinances of the Council created hereby.

**{¶24}** Article III, Section 8 of the city's charter further provides that "[t]he Council shall determine its own rules and order of business, provide for special meetings and keep a journal of its proceedings."

**{¶25}** Thus, the city's charter establishes that city council will determine its own rules and order of business; that is, the city's charter expressly states that city council will follow its own rules, and not the rules of the state.

**{¶26}** Kanter further argues that even if this court determines that Cleveland Heights expressly authorized its ordinance to prevail over state statutory provisions, there is no conflict between CHCO 107.04(a) and R.C. 121.22(C). The Ohio Supreme Court has held that the Home Rule Amendment governs respective legislative roles of the state and its municipalities, and in matters of local self government, if a portion of a municipal charter expressly conflicts with a parallel state law, the charter provision will prevail. *State ex rel. Fenley v. Kyger*, 72 Ohio St.3d 164, 165, 648 N.E.2d 493 (1995); *State ex rel. Bardo v. Lyndhurst*, 37 Ohio St.3d 106, 108-109, 524 N.E.2d 447 (1988).

**{¶27}** Although we have already set forth the language of the statute and ordinance at issue, CHCO 107.04(a) and R.C. 121.22(C), it will assist our analysis in this section to

repeat them here.  CHCO 107.04(a) states in relevant part that

> The minutes of all regular, special and emergency meetings of council, shall be promptly recorded in writing and open to the public for inspection. Minutes of Council committee meetings may be recorded in writing. Minutes of executive sessions of public bodies need only reflect the general subject matter of discussion in such executive sessions.

**{¶28}** R.C. 121.22(C) states in relevant part:

> The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this section.

**{¶29}** After comparing the ordinance and statute, it is clear that unlike R.C. 121.22(C), Cleveland Heights expressly intended to distinguish council committee meetings from "all regular, special and emergency meetings of counsel" and from executive sessions.  Moreover, the two legislative enactments are nearly identical — except for the provision in CHCO 107.04(a) that makes recording minutes of council committee meetings discretionary.  Thus, the two clearly conflict and Cleveland Heights' ordinance will prevail.

**{¶30}** Kanter further maintains that because CHCO 107.04(a) states that "[m]inutes of council committee meetings may be recorded in writing," it "should be interpreted as merely providing that the minutes may be recorded in writing rather than some other means of recording, such as audio or video."  We disagree.  Neither CHCO 107.04, nor any other provision in the codified ordinances support Kanter's proposed interpretation.

{¶31} Finally, Kanter asserts in his second "proposition of law" essentially that Cleveland Heights did not follow the mandates of R.C. 121.22. He argues that *State ex rel. Long v. Cardington Village Council*, 92 Ohio St.3d 54, 748 N.E.2d 58 (2001), a case that he heavily relied on in his brief (he cited it at least seven times), supports this argument because the facts "closely resemble[s]" the facts in the instant case. But after a thorough review of *Long*, we find Kanter's arguments to be misplaced.

{¶32} In *Long*, the Ohio Supreme Court held that village council members had to prepare, file, and maintain full and accurate minutes of their public meetings pursuant to R.C. 121.22. *See id.* at 58-61. The holding in *Long*, however, has no bearing on the present case. There is nothing in *Long* to indicate that the village of Cardington had adopted a charter pursuant to Section 3, Article XVIII of the Ohio Constitution, or even that it had enacted an ordinance in conflict with the state statute — either as a chartered or nonchartered municipality (because as we stated earlier, even a nonchartered city has some powers over local self-government under the Home Rule Amendment). The issue in *Long* was whether the village had properly followed the mandates of R.C. 121.22 — presumably because it had not enacted any ordinance on the same subject matter that conflicted with R.C. 121.22. Thus, the holding in *Long* simply does not apply here.

{¶33} Indeed, the Ohio Supreme Court has stated that it is axiomatic that an ordinance, "if enacted by a chartered municipality, would prevail over the state law irrespective of any conflict." *N. Ohio Patrolmen's Benevolent Assn.*, 61 Ohio St.2d at 378, 402 N.E.2d 519, citing *Mullen v. Akron*, 116 Ohio App. 417, 188 N.E.2d 607 (9th

Dist.1962). The issue in *N. Ohio Patrolmen's* was "whether a nonchartered municipality [had] similar powers to enact an ordinance in matters of local self-government [that] are at variance with state law." *Id.* The Supreme Court held that a nonchartered municipality must follow state law on procedural matters, but may enact and follow its ordinances on substantive matters. *Id.* at 382-383.

{¶34} We find the present case more analogous to *Hills & Dales*, 4 Ohio App.3d 240, 448 N.E.2d 163 (9th Dist.). In *Hills & Dales* ("Hills & Dales"), a corporation sought a declaration that the city's new zoning code was invalid because it had been enacted in violation of Ohio's Open Meeting Act set forth in R.C. 121.22. Specifically, Hills & Dales argued that because the city planning commission held a private meeting (i.e., not open to the public) on the proposed zoning ordinance, the city violated R.C. 121.22.

{¶35} The Ninth District disagreed with Hills & Dales, holding that the city was not required to follow the mandates of R.C. 121.22. It noted that the city had adopted a charter form of government pursuant to the Ohio Constitution and, thus, had "all the powers of local self-government." *Id.* at 242. In response to Hills & Dales' argument that R.C. 121.22 was a "general law of statewide concern, enacted pursuant to the state's police power, and must, therefore, supercede the police regulations enacted by the municipality," the Ninth District stated:

> First, appellant's proposition that the "Sunshine Law" falls within the ambit of the state's general police powers is without judicial support. The "police powers" of the state encompass the areas of public health, safety, morals and general welfare. Courts which have reached the issue

have unanimously indicated that R.C. 121.22 is not a police power statute. *See Beacon Journal Publishing Co. v. Akron* (1965), 3 Ohio St.2d 191, at 195 [32 O.O.2d 183]; and *Piqua v. Piqua Daily Call* (1979), 64 Ohio App.2d 222, at 225 [18 O.O.3d 168], motion to certify overruled (1979).

Second, and most importantly, we are of the opinion that the procedure by which the municipality conducts its decision-making process is a matter solely within the purview of the powers of a chartered local self-government. Once this determination has been made, it makes little difference whether the "Sunshine Law" is a "general law" or a law of "statewide concern," for in such a case, the constitutionally granted power of local self-government reigns supreme. *See State, ex rel. Canada, v. Phillips*, [168 Ohio St. 191, 151 N.E.2d 722 (1958)]*; Dies Electric Co. v. Akron*, [62 Ohio St.2d 322, 405 N.E.2d 1026 (1980)]; and Justice Locher's dissent in *State, ex rel. Evans, v. Moore*, [69 Ohio St.2d 88, 95-96, 431 N.E.2d 311(1982)].

*Hills & Dales* at 242.

{¶36} The Ninth District held in *Hills & Dales* "that a charter municipality, in the exercise of its sovereign powers of local self-government as established by Section 3 of Article XVIII of the Constitution of Ohio, need not adhere to the strictures of R.C. 121.22." *Id*. at 242-243. The court explained that:

Although zoning regulations themselves fall within the definition of police powers, this is not a case where the municipality's zoning ordinance is alleged to be in conflict with a general law of the state. This is a case which concerns a charter municipality's fundamental power to control the manner in which the local government decision-making process is conducted.

*Id.*

{¶37} Likewise, in *Piqua*, 64 Ohio App.2d 222, 412 N.E.2d 1331, Piqua Daily Call, a newspaper, sued the city of Piqua, a charter municipality, demanding "an injunction and rescission of all municipal resolutions and ordinances" that resulted from

meetings that were not held open to the public in violation of R.C. 121.22. *Id.* at 222-223. The newspaper argued that R.C. 121.22 was a general regulation of the police powers of the state that applied to the city of Piqua. The Second District disagreed, explaining

> It is of the essence of home rule and of self-government that the sovereign body that has that power, whether described as a commission, council, assembly or otherwise, has the inherent power to carry on its duties according to its own rules. Were it otherwise, home rule and self-government would become a fiction, and the purpose of the constitutional amendment would be denied.
>
> * * *
>
> * * * [R.C. 121.22] does not and cannot amend the home rule provision of the Constitution which alone resolves the question of the power of local self-government under a city charter. Legislation that attempts to restrict the sovereign power of local self-government or the rules by which a local legislative assembly manages local affairs has no application to charter cities. The right to tell a charter city commission or assembly when, how, where and under what circumstances it may meet, adjourn or hold an executive meeting no longer exists in the General Assembly. This segment of sovereignty has been assigned, by the Constitution, to charter cities, and it is one in which the state, as a whole, no longer has any residual interest.

*Id.* at 225.

{¶38} Thus, after review, Kanter's first "proposition of law" (where he argues that CHCO 107.04 "does not conflict with Ohio's Sunshine Laws as it does not explicitly supersede them"), as well his second "proposition of law" (where he argues that various provisions of R.C. 121.22 apply) are without merit. Cleveland Heights does not have to follow the mandates of R.C. 121.22.

{¶39} Kanter's sole assignment of error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN A. GALLAGHER, J., CONCUR